UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JAMES ADAMS, )
 )
    Petitioner, )
 )
v. ) No. 3:04-cv-00346
 ) JUDGE HAYNES
STATE OF TENNESSEE, )
 )
    Respondent, )

## MEMORANDUM

Petitioner James Adams filed this action under 28 U.S.C. § 2254, seeking the writ of habeas corpus to set aside his state sentence for convictions of attempted second degree murder, aggravated burglary, and two counts of aggravated assault. After a review of the pro se petition, the Court appointed the Federal Public Defender, who filed a motion to hold the petition in abeyance pending the exhaustion of state remedies. (Docket Entry Nos. 3 and 7). The Court granted Petitioner's motion, and this action was stayed. (Docket Entry No. 9). On February 8, 2010, Petitioner filed a motion to reopen and an amended petition.[1] (Docket Entry Nos. 14 and 15). The Court granted Petitioner's motion to reopen this action on April 7, 2010. (Docket Entry No. 16).

Petitioner's claim is that his sentence was based upon unlawful enhancements in violation of Cunningham v. California, 549 U.S. 270 (2007), United States v. Booker, 543 U.S. 220

---

[1]The Federal Rules of Civil Procedure can apply in a habeas proceeding. Mayle v. Felix, 545 U.S. 644, 649 (2005); Rule 6(a), Rules Governing Section 2254 Cases. Under Fed. R. Civ. P. 15(a), the filing of an amended complaint supersedes the prior complaint. Thus, the Court deems the amended petition to supersede the pro se petition. Clark v. Tarrant Cnty., 798 F.2d

(2005), Blakely v. Washington, 542 U.S. 296 (2004), and Apprendi v. New Jersey, 530 U.S. 466 (2000). Specifically, Petitioner contends that the trial court's decision to run three of his four sentences consecutively was improperly based upon the trial court's finding that Petitioner's criminal activity was extensive and Petitioner was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. (Docket Entry No. 15).

Before the Court is Respondent's second motion to dismiss contending that the petition should be dismissed because Petitioner has not received approval for a second or successive petition and, in the alternative, because Petitioner's claim is untimely and fails on the merits. (Docket Entry No. 32). As a jurisdictional challenge the Court addresses first Respondent's successive petition contention.

## A. Second Successive Petition Issue

Petitioner first sought habeas review in March 11, 2002. The Court dismissed his petition as time-barred (Docket Entry No. 21, Attachment 5 ), and the Sixth Circuit denied Petitioner a certificate of appealability. Id., Attachment 6. Petitioner filed his current petition on April 21, 2004 (Docket Entry No. 1), and Respondent filed its first motion to dismiss (Docket Entry No. 20), which this Court denied. (Docket Entry No. 31).

In its first motion to dismiss, Respondent argued that Petitioner had filed a second or successive petition and had failed to receive the approval of the Sixth Circuit, under 28 U.S.C. § 2244(b)(3)(A), for this Court to exercise jurisdiction. (Docket Entry No. 20 at 3). This Court denied Respondent's motion, holding that Petitioner had not filed a second or successive petition because his initial filing had not been decided on the merits:

---

736, 740-41 (5th Cir. 1986).

> Twenty-eight U.S.C. § 2244(b)(3)(A) requires that "[b]efore a second or successive application [for writ of habeas corpus] is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." <u>A habeas petition is considered a "second or successive petition" if the prior habeas petition was dismissed "on the merits." Gonzalez v. Crosby, 545 U.S. 524, 532 (2005); In re Bowen, 436 F.3d 699, 704 (6th Cir. 2006).</u>
>
> Respondent argues that Petitioner's petition should be dismissed because he did not seek to obtain the Sixth Circuit's authorization before filing a second or successive application for habeas corpus relief. <u>Yet, Petitioner's previous federal habeas petition was not decided on the merits. See (Docket Entry No. 9). Thus, the court concludes that Petitioner's petition is not a "second or successive petition" and therefore Respondent's motion to dismiss should be denied.</u>

(Docket Entry No. 30 at 6) (emphasis added).

Petitioner contends that the Court cannot entertain Respondent's current motion to dismiss because it is an improper successive motion, submitted pre-answer. (Docket Entry No. 35 at 2). Specifically, Petitioner asserts Respondent's successive motion to dismiss violates Rule 12(g) of the Federal Rules of Civil Procedure for failing to consolidate defenses Respondent could have brought previously. Id. Respondent's first motion sought dismissal on jurisdictional grounds arguing that the Court could not hear Petitioner's current habeas petition for failing to obtain Sixth Circuit authorization for a second or successive petition. (Docket Entry No. 20 at 3). Respondent's present motion to dismiss also argues lack of jurisdiction. (Docket Entry No. 33 at 9). However, Respondent further asserts that the petition is time-barred and fails on the merits. Id. at 15.

"Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Rule 12(h)(2)'s

3

exception allows the defense to assert failure to state a claim upon which relief can be granted, despite not being brought in the initial motion to dismiss. Fed. R. Civ. P. 12(h)(2). However, Rule 12(h)(2) provides only three ways to do so: "(1) in an answer, (2) in a motion for judgment on the pleadings, or (3) at trial on the merits." Swart v. Pitcher, No. 92-2401, 1993 WL 406802, at *3 (6th Cir. Oct. 8, 1993). Thus, "Rule 12(h)(2), in setting out the ways in which a party may raise a failure to state a claim argument after the initial pre-answer motion, precludes the filing of a second 12(b)(6) motion to dismiss after an initial motion to dismiss." Id. (citing Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 701 n.3 (6th Cir. 1978)).

In Rauch, the Sixth Circuit explained the Rule 12 scheme:

> In considering the operation of Rule 12(g), it is advisable to keep in mind that Rule 12 was drafted by the Advisory Committee to prevent the dilatory motion practice fostered by common law procedure and many of the codes whereby numerous pretrial motions could be made, many of them in sequence a course of conduct that often was pursued for the sole purpose of delay. . . Simply stated, the objective of the rule is to eliminate unnecessary delay at the pleading stage. Subdivision (g) contemplates the presentation of an omnibus pre-answer motion in which defendant advances every available Rule 12 defense and objection he may have that is assertable by motion. He cannot delay the filing of a responsive pleading by interposing these defenses and objections in piecemeal fashion but must present them simultaneously. Any defense that is available at the time of the original motion but is not included, may not be the basis of a second pre-answer motion. 5 Wright and Miller, Federal Practice & Procedure: Civil § 1384 at 837 (1969) (footnotes omitted).

Id. at 701, n.3. However, other circuits have found that a limitations defense is not among those deemed waived if not consolidated in the first pre-answer motion to dismiss. Robinson v. Johnson, 313 F.3d 128, 138-39 (3d Cir. 2002); Perry v. Sullivan, 207 F.3d 379, 382 (7th Cir. 2000) ("There is, moreover, no requirement under Rule 12 to affirmatively raise the statute of limitations defense by motion.").

Additionally, district courts have "overlook[ed] a 12(g) defect" in order to serve the purpose underlying the rule. Davis v. City of Dearborn, No. 2:09-CV-14892, 2010 WL 3476242, at *4 (E.D. Mich. Sept. 2, 2010). If there is no evidence of a moving party's intent to delay and if "the final disposition of the case will thereby be expedited," courts have discretion to entertain the successive motion. Aetna Life Ins. Co. v. Alla Med. Servs., Inc., 855 F.2d 1470, 1475 n.2 (9th Cir. 1988); Davis, 2010 WL 3476242, at *4.

The Court concludes that Respondent's second pre-answer motion to dismiss was not made for the purpose of delaying the litigation, particularly given that the initial motion argued only jurisdiction. Accordingly, in the interest of promoting efficiency, the Court will exercise its discretion and review the merits of Respondent's motion.

Respondent argues that Petitioner has filed a second or successive petition without authorization from the Sixth Circuit under 28 U.S.C. § 2244(b)(3)(A). (Docket Entry No. 32 at 9-10). However, this Court has already held that Petitioner's filing is not a second or successive petition because Petitioner's first petition was not decided on the merits. (Docket Entry Nos. 9 and 30 at 6). Under the law of the case doctrine, this ruling is the law of the case for subsequent stages of that same litigation, Arizona v. California, 460 U.S. 605, 618 (1983), that can be considered only in extraordinary circumstances. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988). Respondent has not presented any extraordinary circumstances here. Thus, the Court adheres to its earlier ruling that Petitioner's current petition is not a second or successive petition.

### B. Merits Review

#### 1. Procedural History

On March 11, 1998, a jury convicted Petitioner of attempted second degree murder,

5

aggravated burglary, and two counts of aggravated assault. The trial court sentenced Petitioner to twenty years for his conviction of attempted second degree murder, fifteen years for aggravated burglary, and fifteen years for each of the two aggravated assault counts. State v. Adams, No. M1998-00468-CCA-R3-CD, 1999 WL 1179580, at *1 (Tenn. Crim. App. Dec. 15, 1999), appeal denied (Tenn. Sept. 25, 2000). The court ordered the aggravated burglary sentence to run concurrently, but the other sentences were ordered to run consecutively, for an effective sentence of fifty years. Id. The Tennessee Court of Criminal Appeals affirmed his conviction and sentence. Id. at *15. On September 25, 2000, the Tennessee Supreme Court denied petitioner's application for permission to appeal.

Petitioner did not seek post-conviction relief in state court, but filed for federal habeas relief on March 11, 2002. (Docket Entry No. 21, Attachment 3). On July 29, 2002, the District Court dismissed Petitioner's petition as time-barred under 28 U.S.C. § 2244(d)(1)(A). Id., Attachments 4 and 5. The Sixth Circuit denied Petitioner's application for a certificate of appealability on July 23, 2003. Id., Attachment 6.

On April 21, 2004, Petitioner filed this current action before this Court. (Docket Entry No. 1). The Court entered an order holding the petition in abeyance pending the exhaustion of state remedies. (Docket Entry No. 9). On November 30, 2007, Petitioner filed a pro se petition for post-conviction relief in the state trial court, and it was denied as time-barred. Adams v. State, No. M2007-02898-CCA-R3-PC, 2008 WL 4791495, at *1 (Tenn. Crim. App. Nov. 4, 2008), appeal denied (Tenn. Mar. 29, 2009). The Tennessee Court of Criminal Appeals affirmed, Id. at *2, and the Tennessee Supreme Court denied Petitioner's application to appeal on March 29, 2009. On February 8, 2010, Petitioner filed a motion to reopen and an amended petition. (Docket Entry Nos. 14 and 15). The Court granted Petitioner's motion to reopen this

6

action on April 7, 2010. (Docket Entry No. 16).

## 2. Review of the State Record

As to the facts underlying the state court's imposition of consecutive sentences on Petitioner's convictions, the Tennessee Court of Criminal Appeals found[2] as follows:

> Pursuant to Tennessee Code Annotated § 40-35-115(b)(2), (4), the trial court ordered consecutive sentences after finding by a preponderance of the evidence that the Defendant is an offender whose record of criminal activity is extensive and that the Defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. While either of these factors would support consecutive sentencing, see Tenn. Code Ann. § 40-35-115(b), both factors are supported by the record.
>
> The Defendant stipulated his prior criminal history. The presentence report reflects seven prior felony convictions and six prior misdemeanor convictions. These convictions range in time from April 1978 to May 1993 and include such crimes as assault, aggravated assault, escape, burglary, and sexual battery. The presentence report also reflects pending coercion of a witness charges stemming from the letters and pictures sent to Ms. Lewis, as well as twenty-seven arrests that did not result in convictions or have unknown dispositions. These arrests range in time from May 1978 to December 1993. Based on the Defendant's prior criminal record, the evidence does not preponderate against the determination that the Defendant is an offender whose record of criminal activity is extensive; thus this finding supports the imposition of consecutive sentencing. See State v. Lee, 969 S.W.2d 414, 418 n.2 (Tenn. Crim. App. 1997) (trial court properly found record of criminal activity to be extensive when defendant was arrested and/or convicted of at least twelve offenses, including felonies and misdemeanors).
>
> Similarly, the evidence does not preponderate against the trial court's determination that the Defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. In support of its determination, the trial court considered the nature of the crime, the Defendant's comments to Linda Lewis that he was going to kill her, the Defendant's comments to Christine Lewis that he should have killed her, and the comments heard by Tamika Rucker that next time he would kill Ms. Lewis or he should have killed her. The trial court also considered the disturbing letters and pictures sent to Ms. Lewis from jail,

---

[2]State appellate court opinion findings can constitute factual findings under 28 U.S.C. § 2254(d) with a statutory presumption of correctness. Sumner v. Mata, 449 U.S. 539, 546-47 (1981).

7

from which it can be inferred that the Defendant still wanted to harm or kill Ms. Lewis after being arrested. Finally, the trial court considered the Defendant's statement to Officer Gatwood that he stabbed his girlfriend because she was "sleeping with someone else" and he would do it again if he got the chance. This evidence greatly supports the finding that the Defendant has no hesitation about committing a crime where the risk to human life is high and that he has little or no regard for human life.

Though the Defendant clearly falls within the definition of "dangerous offender," our supreme court has held that before an offender may be sentenced to consecutive sentences based on a finding that the offender is dangerous, "[t]he proof must also establish that the terms imposed are reasonably related to the severity of the offense committed and are necessary in order to protect the public from further criminal acts by the offender." State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995). See also State v. David Keither Lane, No. 03-S-01-9802-CC-00013 (Tenn. Sept. 27, 1999) (holding Wilkerson factors apply only when sentencing pursuant to the dangerous offender category). The trial court found that the proof established these factors, and we agree. The Defendant broke into Ms. Lewis' home and tried to kill her. In the process of trying to kill Ms. Lewis, he assaulted Ms. Lewis' mother and daughter with a knife. He repeatedly stated that he either would kill Ms. Lewis or that he should have killed her. He told an officer that he would do it again. He sent Ms. Lewis disturbing letters and pictures from jail, indicating that he wanted to kill Ms. Lewis. Dr. Schleicher testified that the Defendant still has the same type of impulsive personality. He has refused any type of treatment for his mental condition. It was thus appropriate for the trial court to impose consecutive sentences because the Defendant is a dangerous offender and consecutive sentences are both reasonably related to the severity of the offense and necessary to protect the public from further criminal activity.

State v. Adams, No. M1998-00468-CCA-R3-CD, 1999 WL 1179580, at *12-13 (Tenn. Crim. App. Dec. 15, 1999), appeal denied (Tenn. Sept. 25, 2000).

On appeal, the Tennessee Court of Criminal Appeals concluded the Petitioner's post-conviction claims were untimely under Tennessee law.

In the present case, Petitioner filed his post-conviction petition more than seven years after he was convicted. He claims that the limitations period should be tolled because the trial court improperly enhanced his sentences. This claim is based upon the Tennessee Supreme Court's decision in State v. Gomez, 239 W.3d 733 (Tenn. 2007) and the rulings of the United States Supreme Court in

8

> Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d. 856 (2007); Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d. 435 (2000).
>
> This claim was not raised until after the conclusion of the conviction proceedings, after the petitioner's convictions had become final. This court has held that the holdings of Cunningham, Blakely, and Apprendi are not to be applied retroactively. See, e.g., Billy Merle Meeks v. Ricky J. Bell, No. M2005-00626-CCA-R3-HC, Davidson County (Tenn. Crim. App. Nov. 13, 2007), app. denied (Apr. 7, 2008). This claim is not a cognizable basis for post-conviction relief.

Adams v. State, No. M2007-02898-CCA-R3-PC, 2008 WL 4791495, at *2 (Tenn. Crim. App. Nov. 4, 2008), appeal denied (Tenn. Mar. 29, 2009).

### 3. Conclusions of Law

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides that a person convicted in state court has one year from the time his conviction becomes final on direct appeal to file a federal petition. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of:

> (A) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

In Lindh v. Murphy, 521 U.S. 320 (1997), the Supreme Court held that the AEDPA was to be applied prospectively, to begin after April 24, 1996. Where a federal habeas action is

stayed pending exhaustion of state court remedies, the federal limitations period is tolled. Palmer v. Carlton, 276 F.3d 777, 781 (6th Cir. 2002). Aside from the "stay and abeyance" rule, the federal limitations period can be equitably tolled under the Court's equitable jurisdiction. Souter v. Jones, 395 F.3d 577, 599-600 (6th Cir. 2005). Because Petitioner's direct appeal was pending after 1996, AEDPA's limitations period applies to his claims.

Respondent argues that all of Petitioner's claim are time-barred by the federal habeas statute of limitations, 28 U.S.C. § 2244(d)(1)-(2). The one-year filing period does not commence until the time for filing a petition for writ of certiorari for direct review in the United States Supreme Court has expired. Bronaugh v. Ohio, 235 F.3d 280, 283 (6th Cir. 2000). However, "the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations." 28 U.S.C. § 2244(d)(2). "[A]n application for post-conviction relief is 'properly filed' within the meaning of § 2244(d)(2) 'when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, . . . the time limits upon its delivery.'" Vroman v. Brigano, 346 F.3d 598, 603 (6th Cir. 2003) (quoting Artuz v. Bennett, 531 U.S. 4, 8 (2000)). "The [statutory] tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitioners can no longer serve to avoid a statute of limitations." Vroman, 346 F.3d at 602 (quoting Rashid v. Khulmann, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

The Sixth Circuit emphasized that "[t]his court . . . does not function as an additional state appellate court reviewing state-court decisions on state law or procedure." Vroman, 346

10

F.3d at 604 (citing Allen v. Morris, 845 F.2d 610, 614 (6th Cir. 1988)). Moreover, federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state. Vroman, 346 F.3d at 604 (citation omitted).

Here, the Tennessee Court of Criminal Appeals affirmed Petitioner's conviction and sentence on December 15, 1999, and Petitioner's application to appeal to the Tennessee Supreme Court was denied on September 25, 2000. Petitioner did not pursue a writ of certiorari with the United States Supreme Court. Therefore, his one-year statute of limitations began to run on December 24, 2000, ninety days after the state court judgment became final. Lawrence v. Florida, 549 U.S. 327, 333 (2007). Petitioner did not immediately seek post-conviction relief, and his statute of limitations expired on December 24, 2001. Petitioner did not file this action until April 21, 2004.

Petitioner contends that his petition is timely under § 2244(d)(1)(C) and that his limitations period began running on June 24, 2004, when the Supreme Court decided Blakely v. Washington, 542 U.S. 296 (2004). If the statute of limitations were to begin at that point, Petitioner had until June 24, 2005 to file this action. Petitioner contends that his original petition stated facts supporting his Blakely claim so that his amended petition "relates back" to his original petition. (Docket Entry No. 35, at 3).

The pendency of a federal habeas action does not toll the limitations period for filing a federal habeas claim. Duncan v. Walker, 533 U.S. 167, 181-82 (2001). Under certain conditions, the relation back doctrine under Rule 15(c)(2) of the Federal Rules of Civil Procedure can apply in a federal habeas action, but only to the extent that its application does not conflict with the AEDPA limitations period. Mayle v. Felix, 545 U.S. 644, 654 (2005). As the

11

Supreme Court stated in Mayle:

> ... An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.
>
> \* \* \*
>
> ... Habeas Corpus Rule 11, permits application of the Federal Rules of Civil Procedure in habeas cases "to the extent that [the civil rules] are not inconsistent with any statutory provisions or [the habeas] rules." ... [Section] 2242 specifically provides that habeas applications :may be amended ... as provided in the rules of procedure applicable to civil actions."
>
> \* \* \*
>
> If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance...
>
> \* \* \*
>
> So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order... [.]

545 U.S. at 650, 654, 662, 664 (citations omitted). Thus, to relate back under Rule 15(c), the claim asserted in the amended petition must arise out of the same conduct, transaction, and occurrence set forth or attempted to be set forth in the original petition. See Holloway v. Brush, 220 F.3d 767, 788 (6th Cir. 2000); Berndt v. Tenn., 796 F.2d 879, 883 (6th Cir. 1986).

The purpose of the relation back rule is to allow an amendment to relate back to the filing of the original petition where the Respondent has been put on notice, through the pleadings or from other sources, of the entire scope of the transaction or occurrence out of which the amended claims arise:

> ... [A]mendments that merely correct technical deficiencies or expand or modify

12

the facts alleged in the earlier pleading meet the Rule 15(c) test and will relate back. ... [A]mendments that do no more than restate the original claim with greater particularity or amplify the details of the transaction alleged in the preceding pleading fall within Rule 15(c). But, if the alteration of the original statement is so substantial that it cannot be said that [the Respondent] was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim or defense, then the amendment will not relate back and will be time barred if the limitations period has expired.

Johnson v. Curtis, No. 98-CV-71648-DT, 2000 WL 1769525, at *2 (E.D. Mich. Sept. 29, 2000)

(citing Barcume v. City of Flint, 819 F. Supp. 631, 636 (E.D. Mich.1993)).

In his original 2004 petition, Petitioner alleges that his sentence was unconstitutionally imposed through improper consecutive sentencing. (Docket Entry No. 1, at 1).

> Petitioner avers that the consecutive sentence of 50 years for the offenses of attempt[ed] second-degree murder[,] two counts of aggravated assults [sic][,] and expecially [sic] aggravated burglary.
>
> Petitioner states he was convicted of attempt[ed] second-degree murder (a class B felony)[,] two counts of aggravated assult [sic] (a class C felony)[,] and expecially [sic] aggravated burglary (a class B felony) and received a 50 year sentence of these charges and the word from the judge is that petitioner is a dangerous offender and she was going to save the public and give the petitioner the maximum on each of the sentences.
>
> On the attempt[ed] second-degree murder she gave petitioner the maximum of 20 years, and on the two counts of aggravated assults [sic] she gave the maximum of 15 years, and on the expecially [sic] aggravated burglary she gave the maximum of 15 years, this was consecutive sentences.

Id. at 2. Moreover, Petitioner contended that he "is serving a 50 years sentence pursuant to mitigating enhancement factors which are and were Unconstitutional." Id. at 4. Petitioner's original petition also alleged his lack of opportunity to challenge his applicable enhancement factors, and his classification as a dangerous offender. Id. The core claims of the original petition were that he was subject to an improperly enhanced, consecutive sentence.

13

Petitioner's amended petition also alleges that Petitioner's consecutive sentence violates his Sixth Amendment rights.

> When a sentencing judge imposes a sentence that relies upon judicial fact-finding at sentencing–and <u>not</u> strictly upon the jury's verdict or plea admission–for its authorization, the sentence violates the Sixth Amendment right to trial by jury. See Apprendi v. New Jersey, 530 U.S. 466 (200); Blakely v. Washington, 542 U.S. 296 (2004); United States v. Booker, 543 U.S. 220 (2005); Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856 (2007). No sentence enhancement can be justified above the level authorized by the jury-found facts or plea-based facts alone, even if the enhancement is discretionary rather than mandatory: "Whether the judicially determined [sentencing] facts <u>require</u> a sentence enhancement or merely <u>allow</u> it, the verdict alone does not authorize the sentence," and thus such a sentence is unlawful. Blakely, 542 U.S. at 305 n.8 (emphasis in original).
>
> Mr. Adams's "verdict alone" did not authorize the consecutive sentencing imposed. Id. That consecutive sentencing was authorized only upon the sentencing judge making certain factual findings "upon a preponderance of the evidence." State v. Adams, 1999 Tenn. Crim. App. LEXIS 1236, *35 (Tenn. Crim. App. Dec. 15, 1999). Accordingly, the sentencing judge violated the Sixth Amendment by imposing sentences on Mr. Adams on a consecutive basis. But see Oregon v. Ice, 555 U.S. 160, 129 S.Ct. 711 (2009) (finding no constitutional violation where sentences were imposed on a consecutive basis under Oregon's consecutive sentencing scheme); State v. Allen, 259 S.W.3d 671, 688 (Tenn. 2008) ("We are persuaded to join the majority of courts on this issue and hold that Apprendi and Blakely should be construed narrowly such that they do not apply to Tennessee's statutory scheme for imposing consecutive sentences."). Because the principles of Apprendi, Blakely, Booker, and Cunningham support the conclusion that Mr. Adams's sentence was enhanced based on a judge-found factual finding, this Court should find his sentence unconstitutional and grant relief.

(Docket Entry No. 15, at 3-4).

Petitioner's original petition gave Respondent adequate notice of the substance of his amended claim, see Johnson, 2000 WL 1769525, at *2, and was based on a "common core of operative facts." See Mayle, 545 U.S. at 664. Here, Petitioner's amended petition merely "restate[s] the original claim with greater particularity." See Johnson v. Curtis, 2000 WL

14

1769525, at *2. Accordingly, the Court concludes that Petitioner's amended petition relates back to his original one.

The next issue is whether the original petition was timely filed. Section 2244(d)(1)(C) provides that Petitioner's limitations period begins to run on the date that the Supreme Court recognizes a new constitutional right, as long as that right is "made retroactively applicable to cases on collateral review." Thus, the Court must determine whether the Supreme Court recognized a new constitutional right in Blakely and whether it applies retroactively to Petitioner's case. Petitioner's conviction became final after the Supreme Court decided Apprendi but before Blakely.

Blakely is one in a line of Supreme Court cases of which the seminal case is Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the defendant, convicted of a crime punishable by a maximum of ten years in prison, was sentenced to twelve years. Id. at 470. The sentencing judge found that the defendant's crime was motivated by racial bias. Id. at 470-71. The Supreme Court held that "[o]ther than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.

Two years later, the Supreme Court again faced the issue in Ring v. Arizona, 536 U.S. 584 (2002). There, the jury was instructed on alternative charges of premeditated murder and felony murder. Id. at 591. The jury convicted the defendant only on felony murder, which carries a maximum penalty absent aggravating circumstances of life imprisonment. Id. at 591-92. Yet, between the defendant's trial and sentencing hearing, another individual involved in the robbery pled guilty to a reduced charge and agreed to cooperate with the State. Id. at 593. At

the sentencing hearing, the accomplice testified that the defendant had been planning the robbery for weeks, shot the victim, and led the getaway. Id. at 594-95. The sentencing judge found two statutory aggravating circumstances applied and concluded that these aggravating circumstances outweighed any mitigating ones, warranting the imposition of the death penalty. Id. The Supreme Court, applying Apprendi, held that imposing the greater sentence after only judicial fact-finding was unconstitutional. Id. at 609.

Blakely defined a "statutory maximum" for Apprendi purposes. There, the defendant kidnapped his estranged wife at knifepoint and threatened her with a shotgun. 542 U.S. at 298. The defendant pled guilty to reduced charges and admitted solely the elements of the offenses. Id. at 298-99. Washington state law provided a statutory maximum of ten years for his crimes, but a sentence above a "standard range" of 49 to 53 months was prohibited unless the sentencing judge found "substantial and compelling reasons justifying an exceptional sentence." Id. at 299 (citation omitted). The defendant was sentenced above the standard range upon the sentencing judge's finding that he acted with "deliberate cruelty." Id. at 300 (citation omitted). The Supreme Court held that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u> . . . [.] In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose <u>without</u> any additional findings." Id. at 303-04 (emphasis in original and citations omitted).

In United States v. Booker, 543 U.S. 220, 237-38 (2005), the Supreme Court held that the upper end of the then-mandatory federal sentencing guidelines was the statutory maximum for

16

Apprendi purposes, and judicial fact-finding used to justify a sentence above the guidelines range violated the Sixth Amendment.

Thus, even if Petitioner is correct that Blakely created a new constitutional right, Blakely is not applied retroactively. United States v. Saikaly, 424 F.3d 514, 518 (6th Cir. 2005). "[T]he holding in Blakely does not apply retroactively to cases that were already final on direct review at the time Blakely was decided and which raise the Blakely issue in a proceeding for collateral relief." Lewis, No. 3:06-0069, 2006 WL 4071641, at *8 (M.D. Tenn. Oct. 27, 2006). The Supreme Court held that a new rule is retroactively applicable to cases on collateral review for § 2244(d)(1)(C) only when the Supreme Court itself holds the rule to be retroactive, which the Supreme Court has not done. Tyler v. Cain, 533 U.S. 656, 662 (2001). Accordingly, Petitioner's petition is time-barred, and the Court concludes that Respondent's motion to dismiss (Docket Entry No. 32) should be granted.

For the reasons stated above, the Petitioner's petition (Docket Entry No. 1) and amended petition (Docket Entry No. 15) for the writ of habeas corpus should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the _28th_ day of July, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge